UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

ANDREA PHILLIPS and PAUL HINTON,
*as Parents and Natural Guardians of S.H.*, and      :
ANDREA PHILLIPS and PAUL HINTON,
*individually*,                                                            :

                        Plaintiffs,                           :

        -v.-                                                            :

DAVID C. BANKS,[1] *in his official capacity as*      :
*The Chancellor of the New York City Department*
*of Education*, and the NEW YORK CITY                 :
DEPARTMENT OF EDUCATION,

                                 :

                  Defendants.
----------------------------------------------------------------X

OPINION AND ORDER

21 Civ. 09178 (GWG)

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

       Andrea Phillips and Paul Hinton, on behalf of their child S.H. and themselves, brought

this action under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 <u>et</u>

<u>seq.</u>, against the Chancellor of the New York City Department of Education and the New York

City Department of Education (collectively, "DOE"). <u>See</u> Complaint, filed Nov. 5, 2021

(Docket # 1) ("Compl."). Following state administrative determinations on their claims, the

plaintiffs filed this action to seek review of the administrative proceedings, and both sides filed

summary judgment motions.[2] For the reasons below, the Court denies the plaintiffs' motion for

summary judgment and grants DOE's cross motion.

---

    [1] David C. Banks, the current Chancellor of the New York City Department of
Education, is substituted as defendant for Meisha Porter pursuant to Fed. R. Civ. P. 25(d).

    [2] <u>See</u> Motion for Summary Judgment, filed July 27, 2022 (Docket # 29) ("Pl. Mot.");
Rule 56.1 Statement, filed July 27, 2022 (Docket # 28) ("Pl. 56.1 Stat."); Memorandum, filed
July 27, 2022 (Docket # 30) ("Pl. Mem."); Cross Motion, filed July 27, 2022 (Docket # 31)
("Def. Mot."); Rule 56.1 Statement, filed July 27, 2022 (Docket # 32) ("Def. 56.1 Stat.");
Memorandum, filed July 27, 2022 (Docket # 33) ("Def. Mem."); Memorandum in Opposition,

# I.  BACKGROUND

## A.  Legal Background

The Second Circuit has summarized the operation of the IDEA as follows:

A state receiving federal funds under the IDEA must provide disabled children with a free and appropriate public education ("FAPE").  Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186, 192 (2d Cir. 2005).  To ensure that qualifying children receive a FAPE, a school district must create an individualized education program ("IEP") for each such child.  See 20 U.S.C. § 1414(d); Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ., 297 F.3d 195, 197 (2d Cir. 2002) (describing the IEP as the "centerpiece" of the IDEA system).  The IEP is "a written statement that sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives."  D.D. ex rel. V.D. v. N.Y.C. Bd. of Educ., 465 F.3d 503, 507–08 (2d Cir. 2006) (internal quotation marks omitted).  The IDEA requires that an IEP be "reasonably calculated to enable the child to receive educational benefits."  Bd. of Educ. v. Rowley, 458 U.S. 176, 207, 102 S Ct. 3034, 73 L.Ed.2d 690 (1982).  In New York, the state has assigned responsibility for developing IEPs to local Committees on Special Education ("CSEs").  N.Y. Educ. Law § 4402(1)(b)(1); Walczak v. Fla. Union Free Sch. Dist., 142 F.3d 119, 123 (2d Cir. 1998).  CSEs are comprised of members appointed by the local school district's board of education, and must include the student's parent(s), a regular or special education teacher, a school board representative, a parent representative, and others.  N.Y. Educ. Law § 4402(1)(b)(1)(a).  The CSE must examine the student's level of achievement and specific needs and determine an appropriate educational program.  Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 107–08 (2d Cir. 2007).  If a parent believes that his child's IEP does not comply with the IDEA, the parent may file a "due process complaint" (a type of administrative challenge unrelated to the concept of constitutional due process) with the appropriate state agency.  20 U.S.C. § 1415(b)(6).  In such cases, the IDEA mandates that states provide "impartial due process hearings" before impartial hearing officers ("IHOs").  Id. § 1415(f).  Under New York's administrative system, the parties first pursue their claim in a hearing before an IHO.  N.Y. Educ. Law § 4404(1).  Either party may then appeal the case to the state review officer ("SRO"), who may affirm or modify the IHO's order.  Id. § 4404(2).  Either party may then bring a civil action in state or federal court to review the SRO's decision.  20 U.S.C. § 1415(i)(2)(A).

R.E. v. New York City Dep't of Educ., 694 F.3d 167, 174-75 (2d Cir. 2012).

---

filed July 27, 2022 (Docket # 34) ("Pl. Opp."); Reply, filed July 27, 2022 (Docket # 35) ("Def. Reply").

"Instead of requiring that parents send their child for an extended period to a public school that offers a program the parents believe to be inadequate to their child's needs, the IDEA further authorizes parents to enroll their child unilaterally in a private school and, in challenging their child's proposed IEP, to seek reimbursement for tuition at the private school that in their view provides a suitable program." Bd. of Educ. of Yorktown Cent. Sch. Dist. v. C.S., 990 F.3d 152, 159 (2d Cir. 2021) (referencing 20 U.S.C. § 1412(a)(10)(C)(ii)).

B.  S.H.'s Educational Background and Disabilities

S.H. was 20 years old when this lawsuit began. See R. 48. [3]  S.H. attended New York City public schools beginning in the 2006-07 school year for kindergarten.  R. 8; Pl. Mem. at 1. He is non-ambulatory and nonverbal, R. 301-302, 313, and has been diagnosed with cerebral palsy, spastic quadriplegia, microcephaly, multifocal partial seizures, and dysgenesis of the corpus callosum, R. 364, 954; Def. 56.1 Stat. ¶ 2, which, as the SRO summarized, has resulted in S.H. having cognitive impairments, cortical visual impairment, and orthopedic problems.  R. 18.

For the 2017-18 school year, the CSE met in November 2017 to develop that school year's IEP.  R. 18, 819.  The CSE agreed that S.H. remained eligible as a student with multiple disabilities and recommended: a year-round "12:1+(3:1) special class in a specialized school"[4]; sessions of individual occupational, physical, and speech-language therapy; sessions of individual occupational therapy and speech-language therapy outside of school; adapted physical

---

[3]  "R.__" refers to the page number of the administrative record.  See Certified Administrative Record, filed Mar. 9, 2022 (Docket # 16).

[4]  12:1+(3:1) refers to a ratio of 12 students to 1 teacher plus a ratio of 3 students to an aide, social worker, or paraprofessional.  Although the parties refer repeatedly to a "12:1:4" ratio in the administrative record, the SRO rendered it as 12:1+(3:1), which is consistent with the IEP, see R. 9 n.1, 814, and the Court follows this format.

education; a "full time 1:1 paraprofessional for health and feeding"; and a dynamic display speech generating device.  R. 8-9; R. 814-815.

Over a year later, the CSE convened to develop S.H.'s IEP for the 2018-19 school year.  R. 9; R. 742.  The CSE found continued eligibility for S.H. as a student with multiple disabilities and recommended mostly the same services.  R. 746-48.  Likewise, the CSE convened a year later for S.H.'s 2019-20 school year IEP.  R. 780.  The CSE found S.H. remained eligible and provided for most of the same services but added that S.H. should receive "repetition of activities," "math manipulatives," and "repeated prompts."  R. 774.

Shortly thereafter, S.H.'s parents gave notice that they had enrolled S.H. in the International Institute for the Brain ("iBRAIN") and executed a related transportation contract.  R. 9-10, 915.  On January 2, 2020, S.H. began attending iBRAIN.  Id.

 C. Administrative Proceedings

Plaintiffs filed their due process complaint on April 29, 2020.  R. 794.  This complaint alleged that DOE "procedurally and substantively denied [S.H.] a FAPE during his entire educational career" and requested an impartial hearing pursuant to IDEA and its related New York state law provisions.  Id.  Plaintiffs alleged, among other things, that the IEP for the 2017-18 school year was not based on a thorough enough review, did not alter previous recommendations that had not led to sufficient progress, and did not provide for enough services (or services at a sufficient frequency and duration, such as at-home physical therapy only five times a week for only 30 minutes per session).  R. 796.  As to the 2018-19 school year, the complaint alleged that a lack of training for and/or calibration of an "eye gaze" device rendered it useless for S.H. to use to communicate.  R. 797.  Additionally, the complaint said that entire school year was "an almost total loss" for S.H. because the assigned teacher left midway through

and the new teacher and service providers "did not know how to work with him." Id. As for the 2019-20 school year, plaintiffs noted that tests incorporated in that year's IEP showed regression for S.H. over the previous year and nevertheless approved insufficient services, from inadequate at-home support to educational and related programming to transportation. R. 797-98.

The complaint alleged DOE's failure to provide a FAPE for various reasons. R. 799-802. First, DOE improperly classified S.H. as having "multiple disabilities" rather than classifying him as having "traumatic brain injury." R. 799-800. Second, the CSE "failed to develop appropriate goals." R. 800. Third, DOE "failed to conduct appropriate, timely and comprehensive evaluations." Id. Fourth, "[t]he CSE denied the Parents their right to meaningfully participate in the Student's education" including by "repeatedly [misinforming] the Parents about the types of supports and prostheses that Sam required to increase strength, control, and flexibility in his joints, and failed to provide these supports." Id. Fifth, "[t]he DOE failed to recommend and provide appropriate related services." Id. Sixth and seventh, DOE did not address S.H.'s "highly intensive management needs" and "academic needs," respectively. R. 801. Eighth, "[t]he DOE failed to present appropriate Present Levels of Performance on the Student's IEPs." Id. And ninth, "[t]he DOE failed to develop an appropriate educational placement," by recommending essentially the same educational format year after year, not recommending a private school, and not mandating a school nurse. Id.

On October 13, 2020, the state appointed Impartial Hearing Officer Mitchell Regenbogen to hear the matter. R. 43. DOE moved to dismiss the complaint with respect to any claims it made from 2006 through the 2017-18 school years because of IDEA's two-year statute of limitations. R. 45-46. Plaintiffs did not oppose this motion. Id. The IHO granted the motion. R. 46. With respect to the 2017-18 school year, the IHO noted that the plaintiffs "did not file the

. . . due process complaint until more than two years after [S.H.'s IEP] meeting and more than

two years after the start of the 2017-2018 school year, that the Parent was present and/or

participated in the IEP meetings, that the Parent was aware of the [CSE] placement

recommendation no later than June 2017, and that therefore the Parent was aware of her claim as

to the 2017-2018[] school year recommendation well prior to the two year period that proceeded

the filing of the instant complaint." R. 45-46. The IHO ordered these portions of the complaint

dismissed. R. 46.

The IHO held a hearing on four dates beginning November 5, 2021. R. 50. A special

education teacher, occupational therapist, teacher, iBRAIN's director of special education, and

S.H.'s parents all testified. Id. The IHO issued an 18-page decision on the merits of the due

process complaint. R. 48-65. As to the plaintiffs' claim of denial of FAPE due to

misclassification of S.H., the IHO found that the record did not support a designation of

traumatic brain injury or that the classification of multiple disabilities was inappropriate. R. 52.

Turning to the analysis about a denial of FAPE for each of the challenged school years, the IHO

determined that the DOE provided S.H. a FAPE. R. 55, 58, 60. IHO further found that

iBRAIN's program was deficient and inappropriate for S.H. R. 60-63. Lastly, turning to an

analysis of equitable factors, the IHO found "that the equities disfavor neither side." R. 63-64.

Thus, the IHO denied the entirety of the due process complaint. R. 64. The plaintiffs appealed

to the SRO. See R. 69.

The SRO issued a decision on July 6, 2021. See R. 40. The SRO deemed some claims

unreviewable — either because the plaintiffs failed to raise them in the due process complaint, R.

18-19, or because they had failed to raise them on appeal to the SRO, R. 19, 26. As to the

preserved claims, the SRO upheld the IHO determination except on one point: the SRO found

that DOE failed to provide a FAPE in the 2017-2018 school year.  R.20.  In making this finding,

the SRO first found that because the due process complaint was filed on April 29, 2020, "claims

involving the implementation of the November 20, 2017 IEP that accrued on or after April 30,

2018 are not barred."  R. 15-16.  This meant that the SRO found a violation for 2017-2018

school year only for the time period of April 30, 2018 "through the end of the 2017-18 school

year."  R. 20.  Parsing the due process complaint's claims for the 2017-18 school year that

accrued within this window and that the plaintiffs preserved for appeal, the SRO found the DOE

failed to provide 16 hours of home-based occupational therapy services consistent with the IEP.

Id.  Because of this failing by the DOE, the SRO ordered compensation to plaintiffs for the 16

hours of services not provided.  R. 40.  As to the 2018-19 and 2019-20 school years, however,

the SRO upheld the IHO's determination that the City had provided a FAPE for those years.  R.

21-30.[5]

## II.    LEGAL STANDARD GOVERNING COURT REVIEW OF THE SRO DECISION

"The IDEA permits a dissatisfied party to challenge an SRO's decision in state or federal

court."  Bd. of Educ. of Yorktown Cent. Sch. Dist., 990 F.3d at 164; 20 U.S.C. § 1415(i)(2)(A).

"In a district court proceeding under the IDEA, the parties and the court typically style the

decision as a ruling on a motion for summary judgment, but 'the procedure is in substance an

appeal from an administrative determination, not a summary judgment motion.'"  Id. at 165

(quoting M.H. v. N.Y.C. Dep't of Educ., 685 F.3d 217, 226 (2d Cir. 2012)).  "Reimbursement

claims are assessed using the three-step Burlington/Carter test: parents are entitled to

reimbursement if (1) the school district's proposed placement violated the IDEA, (2) the parents'

---

[5]  For purposes of developing the record for review, the SRO also addressed the IHO's
determinations on the unilateral placement and equitable considerations.  R. 31-40.  In light of
our ruling, however, it is not necessary to consider these findings.

alternative private placement is appropriate to meet the child's needs, and (3) equitable considerations favor reimbursement. . . . Courts assessing claims for compensatory education review whether violations of the IDEA denied the child a FAPE, effectively the same analysis as the first prong of Burlington/Carter." F.L. v. Bd. of Educ. of Great Neck Union Free Sch. Dist., 735 F. App'x 38, 39 (2d Cir. 2018) (internal quotations omitted).

"In determining whether an IEP complies with the IDEA, courts make a two-part inquiry that is, first, procedural, and second, substantive. At the first step, courts examine whether there were procedural violations of the IDEA, namely, whether the state has complied with the procedures set forth in the IDEA. . . . Courts then examine whether the IEP was substantively adequate, namely, whether it was reasonably calculated to enable the child to receive educational benefits." R.E., 694 F.3d at 189-90 (internal quotations omitted). "Substantive inadequacy automatically entitles the parent to reimbursement, but procedural violations do so only if they impeded the child's right to a FAPE, significantly impeded the parents' opportunity to participate in the decisionmaking process, or caused a deprivation of educational benefits." D.B. v. Ithaca City Sch. Dist., 690 F. App'x 778, 780 (2d Cir. 2017) (citations omitted).

"To meet its substantive obligation under the IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances. . . . Any review of an IEP must appreciate that the question is whether the IEP is reasonable, not whether the court regards it as ideal." Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1, 580 U.S. 386, 399 (2017) (emphasis in original).[6] "Indeed, even where

---

[6] The Second Circuit has found its cases predating Endrew F. were "consistent" with the standard announced in that case. Mr. P v. W. Hartford Bd. of Educ., 885 F.3d 735, 757 (2d Cir. 2018).

there is evidence of success, courts should not disturb a state's denial of IDEA reimbursement where . . . the chief benefits of the chosen school are the kind of educational and environmental advantages and amenities that might be preferred by parents of any child, disabled or not.  A unilateral private placement is only appropriate if it provides education instruction specifically designed to meet the unique needs of a handicapped child."  Gagliardo, 489 F.3d at 115 (citations omitted).

Although this standard is not "a bright-line rule," it is also not "an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review."  Endrew F., 580 U.S. at 404 (quoting Rowley, 458 U.S. 176, 206 (1982)). While courts "must engage in an independent review of the administrative record and make a determination based on a preponderance of the evidence," the court's role is "circumscribed" and gives "due weight" to the administrative proceedings.  Gagliardo, 489 F.3d at 112-13.  "Courts generally 'defer to the final decision of the state authorities, even where the reviewing authority disagrees with the hearing officer.'"  M.H., 685 F.3d at 241 (quoting A.C. ex rel. M.C. v. Bd. of Educ. of the Chappaqua Cent. Sch. Dist., 553 F.3d 165, 171 (2d Cir.2009)).  Where "the decisions of an IHO and a SRO conflict, the Court should generally defer to the SRO's decision, as the 'final decision of the state authorities. . . . This is particularly true when the state officer's review has been thorough and careful."  J.W. v. New York City Dep't of Educ., 95 F. Supp. 3d 592, 601 (S.D.N.Y. 2015) (citations and quotations omitted).  "[A] court must defer to the SRO's decision on matters requiring educational expertise unless it concludes that the decision was inadequately reasoned, in which case a better-reasoned IHO opinion may be considered instead." R.E., 694 F.3d at 189.  Additionally, "courts should defer to the IHO's analysis when

considering an issue not reached by the SRO." C.F. ex rel. R.F. v. New York City Dep't of

Educ., 746 F.3d 68, 77 (2d Cir. 2014).

     As for the amount of deference due to administrative determinations, the Second Circuit

has found:

> deference owed to an SRO's decision depends on the quality of that opinion.
> Reviewing courts must look to the factors that normally determine whether any
> particular judgment is persuasive, for example, whether the decision being
> reviewed is well-reasoned, and whether it was based on substantially greater
> familiarity with the evidence and the witnesses than the reviewing court. . . .
> However, courts must bear in mind the statutory context and the administrative
> judges' greater institutional competence in matters of educational policy.

R.E., 694 F.3d at 189 (citations omitted).

     "On issues of law, however, such as the proper interpretation of the federal statute and its

requirements[,] courts owe no deference to state hearing officers." Bd. of Educ. of Yorktown

Cent. Sch. Dist., 990 F.3d at 165 (citations omitted).

III.    DISCUSSION

     We begin by finding that the SRO and the IHO's decisions were thorough, lengthy

and --- especially in the case of the SRO --- well-reasoned.  The SRO's decision reflects a greater

familiarity with the evidence and witnesses than this Court.  We are also mindful of the IHO and

the SRO's "far greater competence in matters of educational policy." R.E., 694 F.3d at 189.  As a

result, we give great deference to the findings of these administrative judges.

     With this in mind, we next address the issues raised in the plaintiffs' summary judgment

motion.

    A.  Insufficient Evaluation Conducted

     Plaintiffs argue that the CSE failed to consider enough evaluative evidence in creating the

IEPs for the challenged school years.  Pl. Mem. at 9-11.  Specifically, plaintiffs identify the lack

of a "neuropsychological evaluation," which the DOE recommends undertaking for students with a traumatic brain injury.  Id. at 9.  Further, plaintiffs argue "the CSE team did not consider or obtain relevant evaluative reports related to S.H.'s disability," such as those related to occupational therapy, physical therapy, speech-language therapy, or vision.  Id. at 10.

As an initial matter, the SRO and IHO both rejected plaintiffs' contention that S.H. should be classified as "traumatic brain injury" and found the DOE's classification of "multiple disabilities" to be appropriate.  R. 16-17, 51-52.  Referring to the definitions from New York's implementing regulations, the SRO notes that "traumatic brain injury" "does not include injuries that are congenital or caused by birth trauma" while "multiple disabilities" is a more generic term referring to "concomitant impairments . . . the combination of which cause such severe educational needs that they cannot be accommodated in a special education program solely for one of the impairments."  R. 17 (referencing 8 NYCRR § 200.1(zz)(8), (12)).  The record as presented to the administrative officers supports the classification of multiple disability and not one of traumatic brain injury given that S.H. has congenital injuries, consistent with the administrative finding.  See, e.g., R. 652; see also R. 52 (The IHO noting that "[t]he Parents produced nothing to contradict the District's assertion that the Student was born with cerebral palsy.").  In any event, and more germane to our review, the SRO also properly described the classification issue as a "red herring," inasmuch as a plan is formulated for the unique needs of each student, not based on the classification alone.  R. 32.  As the SRO stated, "CSEs are not supposed to rely on the disability category to determine the needs, goals, accommodations, and special education services in a student's IEP."  R. 17.

Nevertheless, the SRO found — and the record supports the finding — that the CSE engaged with a range of clinical experts familiar with S.H. in formulating its IEPs for the

challenged school years consistent with his apparent needs at the time.  See R. 21-22.  For

example, an occupational therapist testified before the IHO that she worked with S.H. beginning

in 2014 and completed assessments for the 2017-18, 2018-19, and 2019-20 school years, which

were incorporated in the IEP.  R. 21; R. 470-491.  Indeed, going through the assessments that the

record shows the district undertook, the SRO found "the district assessed the student across

several domains including those related to academics, communication, cognition, behavior, gross

motor, fine motor, attention, and language."  R. 22.  The SRO deemed IEPs thus based on the

proper level of evaluation.  Id.  The record supports the SRO's determination on this matter.

Further, each IEP noted that its formulation included — in addition to S.H.'s teacher, a district

representative, and at least one of S.H's parents — S.H's physical therapist, speech therapist, and

occupational therapist.  R. 744-45 (noting the inclusion of S.H. himself); R. 782-783.

     Based on the information available to the school and the needs apparent to all parties,

there is not sufficient countervailing evidence that the CSE should have considered additional

evaluative evidence in any of the challenged years.  L.O. v. New York City Dep't of Educ., 822

F.3d 95, 113 n.15 (2d Cir. 2016) ("we must review the adequacy of the IEP at the time it was

offered, based on the information the CSE had at that time").  Also, the Court does not find a

procedural violation occurred, let alone one that "impeded the child's right to a FAPE[,]"

"significantly impeded the parents' opportunity to participate in the decisionmaking process

regarding the provision of a FAPE to the parents' child[,]" or "caused a deprivation of

educational benefits."  M.H., 685 F.3d at 245 (citations and punctuation omitted); 20 U.S.C.

§ 1415(f)(3)(E)(ii).

B.  Vision Education Needs

Plaintiffs make a number of claims about S.H.'s vision impairment.  They argue that there was a procedural failure by DOE because of a lack of evaluations of S.H.'s vision.  See, e.g., Pl. Mem. at 11-13.  They also argue DOE substantively deprived S.H. of the vision support and services he needs.  Pl. Opp. at 13-16.

On both fronts, plaintiffs failed to raise this in their due process complaint or properly before the IHO and SRO.  In response to the only vision-related argument they brought before the SRO, the SRO found the failure to recommend vision services was not included in their due process complaint.  R. 26.  In fact, plaintiffs make some of their arguments on this topic for the first time in the brief supporting their summary judgment motion, see Pl. Mem. at 11-13, and raise additional claims for the first time in their opposition memorandum, see  Pl. Opp. at 13-16.

In an IDEA case, "[f]ailure to exhaust the administrative remedies deprives the court of subject matter jurisdiction."  Cave v. E. Meadow Union Free Sch. Dist., 514 F.3d 240, 245 (2d Cir. 2008).  "Exhaustion of administrative remedies is required under the IDEA so that disputes related to the education of disabled children are first analyzed by administrators with expertise in the area who can promptly resolve grievances."  J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 112 (2d Cir. 2004).  Where a plaintiff fails to raise an issue in a due process complaint, that issue is not before the Court on a review of the administrative proceedings, absent an agreement by the opposing side that widened the "scope of inquiry of the IHO, and therefore also of the SRO" and the Court in review.  D.B. v. New York City Dep't of Educ., 966 F. Supp. 2d 315, 328 (S.D.N.Y. 2013).

The due process complaint filed by plaintiffs, even when considered in combination with the administrative record, does not show that plaintiffs made these arguments.  Nor is there

evidence of an agreement by DOE that expanded the scope of the administrative process.

Plaintiffs argue that the DPC's claim that the "DOE recommended inadequate related services" was sufficient to place this issue before DOE and the IHO because related services "encompasses vision services." Pl. Opp. at 16. In fact, the DPC said only that the "DOE failed to recommend and provide appropriate related services," adding generally that "the CSE failed to recommend services of an appropriate frequency and duration to meet [S.H.]'s needs" and specific complaints about the CSE failing to recommend "AT as a related service" and the DOE failing "to mandate a travel paraprofessional." R. 800. But a general statement regarding "related services" does not provide notice that there is a specific complaint about vision services. The same is true for the other statements about different "related services." As case law holds, "[t]he due process complaint must list the alleged deficiencies with enough specificity so that the Department is able to understand the problems and attempt to remedy them." T.G. ex rel. R.P. v. New York City Dep't of Educ., 973 F. Supp. 2d 320, 337 (S.D.N.Y. 2013) (finding "catch-all allegations" about placement in a due process complaint did not preserve specific claims about placement because the broad allegation failed to inform the defendant "of a specific problem to be remedied").

Because the Court has no authority to review this issue, we deny the plaintiffs' motion for summary judgment as to vision services.

C.  Dysgenesis of the Corpus Callosum

Similarly, plaintiffs argue that because S.H. was diagnosed with dysgenesis of the corpus callosum, which commonly is associated with vision impairment, DOE was aware of the need for vision evaluations as part of the creation of the IEPs. Pl. Mem. at 13-14. Once again, this

issue was not raised in the due process complaint in any form that put the defendants on notice of its existence.  Thus, summary judgment is denied as to this issue.

D.  <u>Prostheses</u>

Plaintiffs note that S.H. received prostheses and other orthotic devices at iBRAIN and argue that the failure of the DOE to recommend such devices in his IEPs constituted denial of a FAPE.  Pl. Mem. at 14.  Plaintiffs made a similar claim in their due process complaint, noting, for example, that "DOE repeatedly misinformed the Parents about the types of supports and prostheses that Sam required to increase strength, control, and flexibility in his joints, and failed to provide these supports."  R. 800.  While the IHO's "merits" determination does not address this point explicitly, plaintiffs did not appeal the lack of determination to the SRO, <u>see</u> R. 167-181, and the SRO did not address it.

Generally speaking, a party is obligated to appeal to the SRO any portion of the IHO decision that "aggrieved" the party, and failure to do so constitutes abandonment of the claim.  <u>D.B.</u>, 966 F. Supp. 2d at 328.  An exception to this rule exists: if a plaintiff raises an issue in the due process complaint and is not "aggrieved" on this issue following the IHO decision, the failure to raise issue on appeal to the SRO does not constitute waiver before the district court.  <u>Id.</u>  Some "courts have construed the term aggrieved liberally" and held that "a party's failure to cross-appeal an issue never reached by the IHO does not necessarily constitute a waiver of its right to pursue that issue."  <u>J.F. v. New York City Dep't of Educ.</u>, 2012 WL 5984915, at *9 (S.D.N.Y. Nov. 27, 2012).  But this exception to the normal waiver of arguments not raised on appeal has come where a party was otherwise successful.  <u>FB v. New York City Dep't of Educ.</u>, 923 F. Supp. 2d 570, 587-88 (S.D.N.Y. 2013) (collecting cases and finding an issue preserved where plaintiffs "were not aggrieved" by the IHO's silence).  Here, plaintiffs received no relief

from the IHO, who found no denial of FAPE for any of the challenged years, and they failed to articulate any argument on their administrative appeal as to prostheses despite the IHO's determination leaving them aggrieved.  Because the SRO was not alerted to the need to review this issue, the issue must be deemed to have been abandoned.  See C.H. v. Goshen Cent. Sch. Dist., 2013 WL 1285387, at *10-11 (S.D.N.Y. Mar. 28, 2013).  "[T]his Court has the power to decide only those issues that were both properly raised in the DPC and not waived by failing to appeal or cross-appeal to the SRO an adverse finding by the IHO."  Id. at 10.

E.  Inappropriate Goals

The IDEA requires IEPs to include "a statement of measurable and annual goals, including academic and functional goals."  20 U.S.C. § 1414(d)(1)(A)(i)(II).  In their summary judgment motion, plaintiffs contend the goals for S.H. in his IEPs "varied substantially from year to year and overstated S.H.'s abilities."  Pl. Mem. at 15.  From the due process complaint stage onwards, plaintiffs have taken issue with some of the goals the CSE set for S.H. in his IEPs.  R. 175-176, 800.  On appeal to the SRO, plaintiffs said the IEP for 2019-20 contained "less challenging goals" than the year prior and had only one goal for S.H. – namely, to "engage with" his Tobii communication device.  R. 176.

The SRO addressed the argument plaintiffs raised at that stage by comparing reports about progress from the 2018-19 IEP in the development of the 2019-20 IEP's goals.  R. 23-25. The goals related to reading and writing were made less difficult in the 2019 review than the year prior, while the math goal was made more difficult even though progress reports showed S.H. had made "little progress" on the goal the year prior.  R. 24, 731-34.  The SRO concluded that "annual goals targeted one skill in reading and one skill in writing [] were somewhat below the student's instructional level, and one skill in math [] was likely too ambitious."  R. 25.  Despite

the mismatch of the goals, the SRO found them appropriate because they "were developed by the student's then current teacher and providers and the evidence indicates that the student's responsiveness was inconsistent and that changes in the goals were needed." Id. The record supports this conclusion, R. 720-722, 727-34, 774-75, and the SRO's summary reflects the discussions shown therein, R. 25. Given that "the sufficiency of goals and strategies in an IEP is precisely the type of issue upon which the IDEA requires deference to the expertise of the administrative officers[,]" Grim v. Rhinebeck Cent. Sch. Dist., 346 F.3d 377, 382 (2d Cir. 2003), and given the Court's lack of expertise in this area, the Court will defer to the SRO's well-reasoned conclusion.

Looking at the other goals at issue, the SRO found a "review of the remaining annual goals and short-term objectives contained in the November 2019 IEP, which addressed OT, PT, speech-language and communication, indicated that the annual goals developed by the CSE were appropriately aligned with the student's skill levels at the time the IEP was developed." R. 25. On some goals, such as "sustaining his head in midline for three consecutive seconds during transfers, between sitting and standing, and while accessing classroom materials" and "maintaining eye contact," the reports showed S.H. made improvement. R. 24; see generally R. 723-725, 727-734. But on others, including those related to comprehension and communication, reports showed "little progress made." R. 24; see generally R. 723-725, 727-734.

"Where a student's needs and objectives remain substantially the same, it is especially sensible that an IEP would reflect continuity with a student's needs and objectives as of previous years," P.C. v. Rye City Sch. Dist., 232 F. Supp. 3d 394, 415 (S.D.N.Y. 2017) (citation omitted). Once again, the SRO's determinations are consistent with the law and with evidence in the

record, and thus the Court defers to the SRO's conclusion that these goals "were appropriately aligned with the student's skill levels at the time the IEP was developed." R. 25.

Finally, within its goals discussion, the summary judgment motion also argues that S.H.'s "management needs were intensive in nature, thus requiring a smaller class size." Pl. Mem. at 15. The Court reads this as challenging the appropriateness of the 12:1+(3:1) class size. The SRO found the class size was an appropriate placement, heavily emphasizing the evidence that S.H. clearly enjoyed group activities and that it increased his engagement and socialization. R. 28-31. That conclusion was supported by evidence in the record. See, e.g., R. 348-49 (teacher stating that "I really saw an increase in his participation in class" and that in considering and rejecting other options, they "felt that home and hospital care was too restrictive . . . and that he benefits a lot from the peer/adult interactions that he has at school, and we felt that 8:1:1 would not give him enough support"); R. 723 (S.H. "is well adjusted in his 12:1(3+1) classroom environment and is socially adept as he navigates different environments within the school and interacts with different adults and his peers."). Given the evidentiary basis for the SRO's determination and the lack of sufficient countervailing evidence presented by plaintiff, the Court will defer to the SRO's determination on this point.

F.   The Delay in the IHO Decision

The plaintiffs' own motion for summary judgment does not argue that the delay in issuing the IHO decision constitutes a basis for reversal of the SRO's decision. Nonetheless, in their reply brief, they argue that the length of time between their filing of the due process complaint and the IHO determination constituted denial of a FAPE or otherwise violated their rights under IDEA. See Pl. Opp. at 3-9.

As noted, a party is obligated to appeal to the SRO any portion of the IHO decision that "aggrieved" the party, and failure to do so constitutes abandonment of the claim.  <u>D.B.</u>, 966 F. Supp. 2d at 328.  The rule applies to procedural rulings of the IHO.  <u>M.C. on behalf of J.C. v. Mamaroneck Union Free Sch. Dist.</u>, 2018 WL 4997516, at *23 (S.D.N.Y. Sept. 28, 2018). Indeed, the Second Circuit has specifically held that "[b]efore seeking judicial review in the federal courts, persons claiming to be aggrieved by procedural violations of the IDEA must first exhaust their administrative remedies."  <u>Garro v. State of Conn.</u>, 23 F.3d 734, 737 (2d Cir. 1994). Here, plaintiffs have made no effort to explain or justify why they did not raise this issue before the SRO.  Because plaintiffs have "offered no reason to think that seeking redress for the alleged procedural violations in the state proceedings would have been futile or that the state system was inadequate to deal with these complaints," the issue of the delay in the IHO's decision is not before us.  <u>Garro</u>, 23 F.3d at 737-38.

      G.  <u>Level of Compensation</u>

The SRO found that DOE failed to provide a FAPE by not providing the number of hours of at-home occupational therapy required in the IEP for the 2017-18 school year.  R. 20.  Based on the relevant statute of limitations and the timing of the due process complaint as filed April 29, 2020, the SRO found that some, but not all, of this failure fell within the requisite time period.  <u>Id.</u>  Plaintiffs argue they are entitled to compensation for an entire year's worth of denial of FAPE, not just the 16 hours tied to the period that survived the statute of limitations.  Pl. Opp. at 23-25.  Plaintiffs cite to <u>K.H. v. New York City Dep't of Educ.</u>, 2014 WL 3866430 (E.D.N.Y. Aug. 6, 2014), for the proposition that IDEA's statute of limitations does not bar claims where a participant in an IEP determination does not, and was not able to, learn about a denial of FAPE until receiving an evaluation later.  Pl. Opp. at 23.  On this basis, plaintiffs argue that DOE's

insufficient provision of at-home occupational therapy should reach back prior to the statute of limitations. Id. at 23-24.

The IDEA's statute of limitations has two recognized exceptions: "if the parent was prevented from requesting the hearing due to (i) specific misrepresentations by the local educational agency that it had resolved the problem forming the basis of the complaint; or (ii) the local educational agency's withholding of information from the parent that was required under [the IDEA] to be provided to the parent." N.J. v. NYC Dep't of Educ., 2021 WL 965323, at *11 (S.D.N.Y. Mar. 15, 2021) (quoting 20 U.S.C. § 1415(f)(3)(D)).  Here, the denial of the FAPE resulted from the failure to provide a specific number of hours of at-home occupational therapy required by the IEP.  R. 20.  Plaintiffs do not marshal evidence showing that there was either a misrepresentation from the defendant that it had resolved the problem or that any information was withheld that was required by law to be provided.  Instead, plaintiffs argue only that iBrain conducted a vision assessment that revealed S.H. needed greater vision support than the DOE had provided, and it was not until this point that they became aware of the extent to which DOE was denying S.H. a FAPE.  Pl. Opp. at 23-24.  There is no connection, however, between a later evaluation and the services at issue.  Plaintiff contend that the later evaluation showed a need for more "vision" support, Pl. Opp. at 23-24, rather than any specific issue tied to the provision of fewer at-home occupational therapy service hours compared to those in the IEP, as described in the SRO's decision.  K.H. is inapposite because in that case, the Court determined the administrative rulings on timeliness were erroneous because they did not consider the actual point at which the plaintiff had an evaluation that indicated they had learning disabilities, which covered essentially all of their claims, not a distinct subset.  2014 WL 3866430, at *16-17.  Here, whatever the effect was of the later vision assessment, plaintiffs have not shown how it could tie

to the point at which their occupational therapy services claim would toll.  That is, they have not

shown how the DOE denied them "critical facts," id. at 17, to know they were not provided

sufficient at-home occupational therapy hours prior to April 29, 2018.  As such, we defer to the

SRO's determination.

      H.  Placement at iBRAIN and Equitable Factors

Because the record supports the SRO's conclusions on the first step of the analysis, the

Court does not address the appropriateness of the plaintiffs' unilateral removal of S.H. or

conduct any analysis of the equitable factors.  T.P. ex rel S.P. v. Mamaroneck Union Free Sch.

Dist., 554 F.3d 247, 254 (2d Cir. 2009).

IV.   CONCLUSION

For the above reasons, the Court denies plaintiffs' motion for summary judgment (Docket

# 29) and grants defendants' cross motion (Docket # 31).  The Clerk is requested to enter

judgment and to close this case.

Dated: February 15, 2023
      New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge